**FEDERAL INSURANCE COMPANY**

v.

**Randy AYERS, Joseph Geltz, and Thomas N. Petro**

v.

**MARCY FITNESS PRODUCTS, Confidential Management, Inc., Parker Mahnke, and Kent Perkins.**

Civ. A. No. 89–8831.

United States District Court, E.D. Pennsylvania.

July 18, 1991.

---

J. Chas. Sheak, Pennington, N.J., for plaintiff.

David L. Deratzian, Philadelphia, Pa., for Geltz.

Thomas C. Carroll, Philadelphia, Pa., for Petro.

Glenn C. Equi, Philadelphia, Pa., for additional defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This action arises from the ongoing enterprise from October 1986 through March 1989, wherein defendants Randy Ayers, Joseph Geltz, and Thomas N. Petro allegedly took fitness equipment, products, and cash belonging to Marcy Fitness Products ("Marcy"), a Pennsylvania manufacturer, and converted the same to their own use and benefit. At all times relevant to this action, Marcy held a crime insurance policy issued by the plaintiff Federal Insurance Company, pursuant to which plaintiff paid Marcy $125,000 in full satisfaction of all claims made under the policy relating to the fraudulent activities of the defendants. This court has already decided that plaintiff, a subrogated surety, has standing to sue because (1) it has subrogation rights pursuant to the crime insurance policy issued to Marcy, and (2) Marcy assigned to it the claims and causes of action arising out of defendants' activities.

Plaintiff seeks relief in this court under 18 U.S.C. § 1962(c) and (d) of the Racketeer Influenced Corrupt Organizations Act ("RICO"). The predicate acts underlying the enterprise include violations of 18 U.S.C. §§ 1956, 1957, 2314, and 2315. In addition, plaintiff has asserted state law racketeering claims under the New Jersey Racketeering Statute, .N.J.S.A. 2C:41-1 *et seq.*, as well as claims for conversion under New Jersey and Pennsylvania state common law. Plaintiff has filed a motion for partial summary judgment[1] against defendants, jointly and severally, on the issues of liability and damages.

## I. Facts[2]

Defendants Ayers and Geltz, who were employed by Marcy at its facility in Pennsylvania, repeatedly took and converted fitness equipment and cash belonging to Marcy from October 1986 through March 1989. During this same period, Ayers and Geltz conspired with defendant Petro to sell at least some of the stolen equipment to Petro, who was a dealer for Marcy in New Jersey.

Defendant Ayers departed the Commonwealth of Pennsylvania after the complaint was filed and was served with the complaint in Arlington, Texas. Default has been entered against him for failing to answer or otherwise plead. Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, plaintiff has moved for a default judgment against Ayers.

## II. Standard of Review

■ Summary judgment is appropriate if there exists no genuine issue of material

---

1. Plaintiff brought this motion for partial summary judgment with respect to only three of the five counts set forth in its second-amended complaint.

2. The primary facts submitted by plaintiff are based upon the written and oral statements of the defendants that were obtained by Marcy's private investigators. Plaintiff submitted these statements as exhibits in support of its motion for partial summary judgment. For a more complete statement of the facts, see Memorandum and Order dated June 26, 1990.

fact and the moving party is entitled to judgment as a matter of law. *Small v. Seldows Stationery,* 617 F.2d 992, 994 (3d Cir.1980). The court does not resolve questions of disputed fact, but simply decides whether there is a genuine issue of fact which must be resolved at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Ettinger v. Johnson,* 556 F.2d 692 (3d Cir.1977). The facts must be viewed in the light most favorable to the non-moving party, and reasonable doubt as to the existence of a genuine issue of material fact is to be resolved against the moving party. *Continental Insurance Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982). However, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law. *Id.* at 252, 106 S.Ct. at 2512.

■ Rule 56(e) places an affirmative duty on the non-moving party to set forth, by affidavit or otherwise, specific facts showing that there is a genuine issue. In doing so, however, defendants cannot create an issue of fact simply by raising arguments contradicting their own prior statements and representations. *Radobenko v. Automated Equip. Corp.,* 520 F.2d 540, 543–44 (9th Cir.1975).

### III. Discussion

#### a. Defendants' Admissions

Each defendant freely gave written and oral statements in which he admitted the commission of various activities that serve as the basis for this lawsuit. I find defendant Geltz' assertion that his statements should be inadmissable hearsay to be non-

persuasive. Admissions by a party opponent, like the statements made by defendants in this case, are excepted from the definition of hearsay pursuant to Rule 801(d)(2) of the Federal Rules of Evidence. A statement is not hearsay if it "is offered against a party and is (A) the party's own statement in either an individual or a representative capacity, or (B) a statement of which the party has manifested an adoption or belief in its truth, or ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2).

I also find defendant Petro's argument that his statements were coerced and, therefore, involuntary to be unpersuasive. These statements were neither obtained by fear, menace, nor duress [3]. In his interview with investigator Peyton Schur, Petro stated:

> *I don't believe that any type of coercion has existed or been attempted.... I,* Thomas M. Petro hereby make the following declaration to Mr. Peyton B. Schur who has identified himself to me as a private investigator from Confidential Management Services. No threats or promises have been made to induce me to make this declaration which *I hereby acknowledge is of my own free will.*

*See* Plaintiff's Motion for Partial Summary Judgment, Exhibit D at 23–24 (emphasis added). Petro has failed to supply this court with any authority in support of his assertion that I should find his statements involuntary and has merely alluded to various practices in the context of criminal trials. In light of (1) his failure to supply substantive support for his assertion and (2) his own statements which clearly acknowledge the lack of coercion, I find that Petro's argument is without merit and conclude that his statements were completely voluntary.

Finally, defendant Petro contends that he did not know at the time he received the merchandise that it was stolen and, as a result, lacked the requisite scienter and

---

**3.** To the contrary, Petro noted that he freely offered his statements as a symbol of good will in order to retain his dealership with Marcy.

*See* Plaintiff's Motion for Partial Summary Judgment, Exhibit D at 18.

intent necessary for liability. However, the substance of his statements demonstrates otherwise. He stated:

> Joe Geltz, an employee at Marcy, approached me with an offer to sell me Marcy products which he had stolen for cash [4].... Geltz told me that another employee was involved, but I never knew who that employee was.

*Id.* at 24. Petro's admission that he was cognizant that an anonymous accomplice "was involved" establishes that he knew that his dealings with Geltz were not legitimate and customary business transactions. His knowledge that he was receiving stolen merchandise is further shown by the fact that the transactions were on a cash-only basis. He cannot argue now that he thought Geltz was acting as a legitimate representative of Marcy without directly contradicting his previous statement. Furthermore, Petro stated:

> The reason I was involved in this problem is because initially I needed product that Marcy could not deliver and eventually a situation developed because Joe Geltz called me and he had the products, most of which I had need [sic] and then Geltz needed money for personal problems.... I feel I have violated a trust relationship with the company and I have set aside my moral and ethical standards and good business name....

*Id.* at 24. Petro's knowledge of Geltz' mysterious accomplice, the fact that all of the transactions were for cash, and his knowledge that these cash payments went to Geltz to solve personal problems, not to Marcy, prove that Petro knew that the goods were stolen and that Geltz was not acting as Marcy's legitimate representative.

### b. Violations of Federal RICO

Under 18 U.S.C. § 1962(c), there are four elements necessary to make out a claim. A plaintiff must allege: (1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated in the affairs or the conduct of the enterprise; and (4) that the defendant participated through a pattern of racketeering activity.[5] *Shearin v. E.F. Hutton Group Inc.,* 885 F.2d 1162, 1165 (3d Cir.1989).

Summary judgment cannot be granted with respect to the RICO claims under 18 U.S.C. § 1962(c) and (d) because there are genuine issues of material fact regarding the commission of the alleged predicate acts under 18 U.S.C. § 2314 (prohibiting interstate transportation of stolen goods), 18 U.S.C. § 2315 (sales of stolen goods transported in interstate commerce), 18 U.S.C. § 1956 [6] (prohibiting laundering of monetary instruments in interstate commerce and certain related activities), and 18 U.S.C. § 1957 (engaging in money transactions from certain specified unlawful activity).

Sections 2314 and 2315 prohibit various activities regarding stolen merchandise having *a value of $5000 or more,* while section 1957 prohibits one from attempting to "engage in a monetary transaction in criminally derived property that is of a *value greater that $10,000."* 18 U.S.C. § 1957 (emphasis added). The value of each shipment and the number of shipments [7] are not clear from the statements made by defendants. Petro stated that he received approximately 15 shipments from Geltz for which he paid a total of $20,000. However, the largest single payment to

---

**4.** Although this statement appears to clearly establish Petro's scienter that the merchandise was in fact stolen, he maintains that he did not know he was buying stolen goods at the time the transactions took place. Rather, he claims that his reference to the goods as "stolen" in his interview reflects knowledge that he had obtained after the transactions had been completed. *See* Defendant Petro's Memorandum of Law at 2.

**5.** To show a pattern of racketeering activity, there must be *at least* two predicate acts. 18 U.S.C. § 1961(5).

**6.** Plaintiff concedes that the facts have not been developed far enough to establish a violation of section 1956. *See* Plaintiff's Memorandum of Law at 11.

**7.** Geltz stated that there were 12 shipments of goods, whereas Petro stated that there were more than 15 shipments.

which Petro admits is only $4000. Geltz, on the other hand, claims to have received approximately $72,450 from Petro and admits that he received $8000 for the last shipment made in January 1989.

Based on the defendants' statements, the commission of the underlying predicate acts is unclear. In order to establish a pattern of racketeering under sections 2314 and 2315, there must be at least two transactions, each having a value of greater than $5000. In the present case, this court only has evidence of one transaction having a value greater than $5,000 [8] and that evidence is disputed. Similarly, with respect to section 1957, there is no evidence of a transaction with a value of greater than $10,000 or of the defendants attempting to engage in a transaction having a value greater than $10,000. Therefore, because there are genuine issues of material fact regarding the commission of the alleged predicate acts, I cannot grant summary judgment with respect to plaintiff's claim under section 1962(c) of RICO.

Consequently, it is also not possible to grant summary judgment with regard to the claim of a RICO conspiracy under 18 U.S.C. § 1962(d). Under section 1962(d), there must be (1) an agreement to commit the predicate acts, and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in a way that would violate section 1962(a), (b), or (c). *Rose v. Bartle*, 871 F.2d 331, 365–67 (3d Cir.1989). Just as the predicate acts and the pattern of racketeering activity have not been sufficiently established in this case for the purpose of summary judgment, neither has the conspiracy to commit them.

c. Violations of the New Jersey Racketeering Statute

■ New Jersey's Racketeering Statute, N.J.S.A. 2C:41–1 *et seq.*, is patterned after and resembles its federal RICO equivalent in many respects. The prohibited activities under New Jersey law are very similar to those under federal RICO law. The state statute prohibits "any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity." N.J.S.A. 2C:41–2; *compare* 18 U.S.C. § 1962(c). For the purpose of finding a violation of federal RICO, the United States Supreme Court has defined "enterprise" as an entity through which the racketeers conduct their activities or into which profits from the racketeering activities are invested. *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981). Under the New Jersey statute, enterprise "includes any individual, sole proprietorship, partnership, corporation, business or charitable trust, association or other legal entity, any union or *group of individuals associated in fact although not a legal entity.*" N.J.S.A. 2C:41–1(c) (emphasis added); *compare* 18 U.S.C. § 1961(4). In the present case, the statements of the defendants clearly establish the existence of an association-in-fact enterprise comprised of the three individual defendants, as alleged by plaintiff.

The New Jersey statute is broader in scope that the federal one because it includes a greater number of predicate acts that constitute incidents of racketeering activity. In addition to the prohibited activities in 18 U.S.C. § 1961(1)(A), (B), and (D), twenty-three state crimes can constitute predicate acts. Among these are theft and related crimes. N.J.S.A. 2C:41–1, subd. a(1)(n). Certain specific and pertinent theft related crimes are defined as follows:

**2C:20–3 Theft by unlawful taking or disposition**

a. Movable Property. A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof.

---

**8.** Although this court recognizes that the purchase price paid by Petro does not necessarily approximate the "value" of the merchandise, plaintiff has not supplied this court with any alternative method for making this "value" determination.

## 2C:20–7 Receiving Stolen Property

a. Receiving. A person is guilty of theft if he knowingly receives or brings into this State movable property of another knowing that it has been stolen, or believing that it was probably stolen....

b. Presumption of Knowledge. The requisite knowledge or belief is presumed in the case of a person who: (1) Is found in possession or control of two or more items of property stolen on two or more separate occasions; or

(2) Has received stolen property in another transaction within the year preceding the transaction charged; or

(3) Being a person in the business of buying and selling property of the sort received, acquires the property without having ascertained by reasonable inquiry that the person from whom he obtained it had a legal right to possess and dispose of it.

## 2C:20–7.1 Fencing

b. Dealing in stolen property. A person is guilty of dealing in stolen property if he traffics in, or initiates, organizes, plans, finances, directs, manages or supervises trafficking in stolen property.

The New Jersey statute, like the federal one, also makes conspiracy to commit a predicate act actionable. N.J.S.A. 2C:41–2(d); *compare* 18 U.S.C. § 1962(d). "It shall be unlawful for any person to conspire as defined by N.J.S.A. 2C:5–2, to violate any of the provisions of this section." *Id.* Section 2C:5–2 provides as follows:

## 2C:5–2 Conspiracy

a. Definition of Conspiracy. A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:

(1) *Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime* or an attempt or solicitation to commit such crime; or

(2) Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

b. Scope of Conspiratorial Relationship. If a person guilty of conspiracy, as defined by subsection a. of this section, knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of conspiring with such other person or persons, *whether or not he knows their identity,* to commit such crime.

(emphasis added).

The defendants' admissions to activities during a period of two years clearly establish both the commission of and conspiracy to commit predicate acts of theft and related crimes, specifically N.J.S.A. 2C:20–3 "Theft by Unlawful Taking or Disposition", N.J.S.A. 2C:20–7 "Receiving Stolen Property," and N.J.S.A. 2C:20–7.1 "Fencing." *See supra* at 1508–09. In addition, defendants' behavior unquestionably fulfills the "pattern of racketeering activity" necessary for liability under the statute. Such a pattern requires "[a] showing that the incidents of racketeering activity embrace criminal conduct that has either the *same or similar purposes, results, participants* or *victims* or *methods of commission* or are otherwise interrelated by distinguishing characteristics and are not isolated incidents." N.J.S.A. 2C:41–1(d)(2). The same three participants, Ayers, Geltz, and Petro, have admitted to repeated conduct that resulted in depriving Marcy of its rightful property. During the more than two years of fraudulent activity, the purposes, results, participants, victim, and methods of commission remained essentially the same, clearly establishing a "pattern of racketeering" as opposed to "isolated incidents."

Accordingly, I shall grant summary judgment in favor of plaintiff as to liability under sections 2C:41–2 and 2C:5–2 of the New Jersey Racketeering Statute.

d. Conversion Under New Jersey and Pennsylvania Common Law

 One is liable in tort in both New Jersey and Pennsylvania for common law conversion for the deprivation of another's right of ownership in, or use or possession of, a chattel without the owner's consent and without lawful justification. *Chemical Bank v. Miller Yacht Sales,* 173 N.J.Super.

90, 413 A.2d 619 (App.Div.1980); *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 451, 197 A.2d 721, 726 (1964). Plaintiff has established a claim for conversion by demonstrating both Marcy's entitlement to the property and defendants' willful acts of depriving Marcy of its right of possession.

▮▮▮ Defendant Geltz asserts that he was given "permission to act as he did by his supervisor [Ayers], an agent of Marcy with the authority to act." *See* Defendant Geltz' Memorandum of Law at 8. This, however, directly contradicts his previously given statement. Geltz already admitted to *stealing* merchandise from Marcy and selling it to Petro for approximately $72,-450 *in cash which he split with Ayers.* *See* Plaintiff's Motion for Partial Summary Judgment, Exhibit A at 1. Rather than acting under authorized supervision, it is evident that he knew he was acting without lawful justification.[9] Intent to exercise dominion or control over goods which is in fact inconsistent with the owner's rights is sufficient for liability in Pennsylvania. *Shonberger v. Oswell*, 365 Pa.Super. 481, 530 A.2d 112 (1987). Similarly, in New Jersey, good faith will not defeat an action for conversion. *McGlynn v. Shultz*, 90 N.J.Super. 505, 218 A.2d 408 (Ch.Div.1966).

Accordingly, I shall grant summary judgment in favor of plaintiff as to liability for conversion under both New Jersey and Pennsylvania common law.

### e. Damages

Plaintiff recognizes that the value of the stolen merchandise in this matter is a "colorable issue of fact." *See* Plaintiff's Memorandum of Law at 23. Additionally, plaintiff acknowledges that

[p]recise calculation of the damages suffered by Marcy is difficult by virtue of

the surreptitious nature of defendants' activities. Materials were simply removed from inventory without proper records being kept, and all transactions with Petro were for cash.

*See* Plaintiff's Motion for Partial Summary Judgment at 6. Defendant Geltz admits to receiving approximately $72,450 from Petro for the stolen goods, whereas Petro only admits to paying approximately $20,-000. On the other hand, plaintiff asserts that Petro paid a total of $55,280 in cash to Geltz.[10]

▮▮▮ Plaintiff requests judgment in the amount of $125,000, which is the amount paid to subrogee Marcy, plus attorneys' fees and costs. The New Jersey Racketeering Statute allows for treble damages, as well as attorney fees and the costs of investigation and litigation. N.J.S.A. 2C:41–4(c). The measure of damages for common law conversion is the market value of the converted property at the time and place of conversion. *Bank of Landisburg v. Burruss*, 362 Pa.Super. 317, 524 A.2d 896 (1987). However, as I have already stated, I am unable to grant summary judgment as to damages because genuine issues of material fact exist with respect to the value of the stolen merchandise.

### f. Defendant Randy Ayers

In this memorandum, I have primarily discussed liability with respect to Geltz and Petro because they are the non-defaulting defendants who responded to plaintiff's motion. However, plaintiff also submitted Ayers' written and oral statements in support of its motion. *See* Plaintiff's Motion for Partial Summary Judgment, Exhibit E. Based on his statements, it is clear that Ayers is liable for violations of the New Jersey Racketeering Statute and for conversion under New Jersey and Pennsylva-

---

**9.** Neither Geltz nor Petro has asserted a good faith defense to the claim of conversion. However, even if they had done so, unusual circumstances are necessary to defeat conversion by asserting good faith, and those circumstances are not present in this case. *Bank of Landisburg v. Burruss*, 362 Pa.Super. 317, 524 A.2d 896 (1987).

**10.** Nevertheless, plaintiff noted that "[t]he amounts received obviously do not in any way approximate the actual value of the items stolen. Cash was paid for each transaction and, of course, none of the defendants kept any receipts for the equipment either at the time it was delivered to Petro or when it was resold by Petro to his 'retail' customers." *See* Plaintiff's Memorandum of Law at 4.

nia common law. Therefore, liability against Ayers is not only supported procedurally by his default, but also substantively by virtue of his statements as well as the statements of Geltz' and Petro.

Plaintiff has filed a motion for default judgment against Ayers. Because plaintiff is seeking one lump sum damage award to be entered against the three defendants jointly and severally, I cannot determine damages with respect to Ayers independent of damages with respect to Geltz and Petro. Thus, I shall hold plaintiff's motion for default judgment in abeyance until a trial is held with respect to the issue of damages.

*IV. Conclusion*

For the reasons set forth above, I shall grant plaintiff's motion for partial summary judgment with respect to liability as to the claims under the New Jersey Racketeering Statute and the claims for conversion under New Jersey and Pennsylvania common law. Since there are genuine issues of material fact regarding plaintiff's claims under RICO, I shall deny plaintiff's motion with respect to those claims.