Jacob **LICHTER** and Jennie L. Lichter, Partners, Doing Business as Southern Fireproofing Company, Appellants,

v.

**MELLON–STUART COMPANY,** Appellee.

No. 13768.

United States Court of Appeals Third Circuit.

Argued April 26, 1962.

Decided July 6, 1962.

See also, D.C., 24 F.R.D. 397.

Paul W. Steer, Cincinnati, Ohio (Steer, Strauss & Adair, Cincinnati, Ohio, Davis ·C. Burroughs, Jr., Moorhead & Knox,

Pittsburgh, Pa., on the brief), for Appellants.

Charles C. Arensberg, Pittsburgh, Pa. (William J. Staley Patterson, Crawford, Arensberg & Dunn, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and HASTIE and SMITH, Circuit Judges.

HASTIE, Circuit Judge.

This is an appeal from a final judgment in a diversity suit. The appellee, Mellon-Stuart Co., a Pennsylvania corporation, had a contract to build a ten-story annex to the Pittsburgh branch of the federal reserve bank of Cleveland and to alter the existing seven-story building. The appellants, Jacob and Jennie Lichter, citizens of Ohio, doing business as Southern Fireproofing Company, whom we shall call Southern, received two subcontracts in connection with the job. They agreed, in one, to do the exterior stone work and, in the other, to do the interior masonry work required by the prime contract.

Before making its bid, Southern was told that the stone work could be started by June 1, 1956, and completed within 60 to 90 days, and that the masonry work could be commenced by the middle of July and completed by December 1, 1956. The bids were based on these representations. However, without fault on Southern's part, it failed to complete either contract as of January 10, 1958, although the work had been "substantially" finished. At that point the contracts were terminated, with Mellon accepting its obligation to pay substantially the contract price, for the work accomplished. Southern, however, both during construction and after completion, demanded extra compensation, claiming that breaches of both contracts had increased its costs of performance. This suit is based on those claims. All disputed legal claims are controlled by Pennsylvania law.

The court below found that Southern's work under the masonry contract had been delayed by a number of factors, including change orders, shortages of ma-

terials, faulty material, delay by other trades, strikes, and interference by Mellon-Stuart. It also found as follows:

"Beginning in January, 1957, Mellon required Southern to start the interior masonry work. It had become increasingly apparent that Mellon was deviating from the two Progress Schedules * * * received by Southern on October 13, 1955 and September 21, 1956, respectively. * * *

"Because the building was not ready for the interior masonry work, Southern in January, 1957, requested a suspension of the interior masonry work until the mechanical trades had completed their work in order that it might proceed in an orderly manner on each floor in sequence. Mellon refused and thereafter required Southern to perform its masonry work piecemeal and in a haphazard and disorderly manner. In addition, contrary to the specifications, Southern was directed by Mellon to do its (Southern's) masonry work on the alterations of the old building before the new building was 'practically complete'. All this required Southern to perform the masonry work over a longer period of time than if it had been performed in sequence, floor by floor, and increased its cost considerably." 193 F.Supp. 216, 220–221.

Despite these findings the trial judge held that the piecemeal manner in which the work was required and the resulting additional costs "stemmed primarily from excusable and contemplated delays", and that Southern's right to damages for "delays" was precluded by the contract. Contesting this ruling, Southern contends, as it did below, that its losses on the masonry contract were not caused by "delay" within the meaning of the contract. Rather, it argues that the responsible cause of the additional costs in suit was the "haphazard, disorderly and piecemeal" manner in which Mellon-Stuart, in violation of the contract, required the masonry work to be done.

The court below relied upon article VI of the subcontract which provides procedure pursuant to which additional time may be allowed by the subcontractor for delays imposed upon him "by substantial changes, omissions or additions, or by fire or the act of God, or by reason of the acts of the Owner or Contractor". It is also provided that the subcontractor shall be allowed time only and "no pecuniary compensation" for the completion of work thus delayed.

Certainly a contract may validly provide that a contractor shall be entitled to no relief except an extension of the time of performance if circumstances beyond his control shall delay his performance, even though such delay does in fact increase his costs. We have today so ruled in Johnson v. Fenestra, Inc., 3 Cir., 305 F.2d 179, relying upon Henry Shenk Co. v. Erie County, 1935, 319 Pa. 100, 178 A. 662. Such a clause might preclude damages here if it were the subcontractor's essential complaint that his performance had been made more costly because he was required to postpone his operations. However, the major contention in this case is just the opposite. The subcontractor complains that he was compelled to proceed with his work too soon and haphazardly before other trades had finished their activities in the areas where masonry was required. Various delaying circumstances, affecting other phases of the overall construction, are said merely to have created a condition of unreadiness for the orderly and systematic performance of masonry work. But this condition is not asserted as a breach of contract. The alleged breach was Mellon's response to Southern's request for delay in the light of the unanticipated condition of the project. Moreover, Southern argues that this breach is established in the present record by a finding of the court below, sitting without a jury, that Southern's workmen were required to perform an average of 13 separate operations on each floor of the 10-story structure, when normal procedure would have involved not more than 2 or 3 operations on each floor.

But even if Southern is correct in its contention that Mellon breached the contract by insisting that the subcontractor proceed under conditions necessitating piecemeal performance of the masonry work, we think there is an insuperable obstacle to recovery on this record. In the opinion of the court below, on Southern's motion for denying a new trial, this difficulty is stated as follows:

"Even if one could find from the evidence that one or more of the interfering contingencies was a wrongful act on the part of the defendant, no basis appears for even an educated guess as to the increased costs suffered by plaintiffs due to that particular breach or breaches as distinguished from those causes from which defendant is contractually exempt from responding in damages." 196 F.Supp. 149, 151.

The record shows that in proving damages the subcontractor introduced testimony as to what it would have cost to perform all of the masonry work if that undertaking had proceeded without untoward occurrences in the manner contemplated at the time of contracting. Next, the actual cost of the entire masonry job as delayed, interrupted and hindered by all causes was proved. The entire difference was claimed as damages without any itemization. During the trial the court inquired of counsel about this method of proof, indicating its risk from the plaintiff's point of view. The colloquy was as follows:

"The Court: What happens if we find the plaintiff is not entitled to damages for delays caused by strikes or change orders, etc.? The plaintiff has lumped his damages and I would have no way to separate them, do I?

"Mr. Steer: No, your Honor, and we don't either. We don't feel that the contract documents entitle, and the evidence, excuse delays caused by strikes.

"The Court: So, you are going to stand or fall on the whole business?

"Mr. Steer: Yes, sir, because it cannot be separated."

In these circumstances Southern's inability to break down its lump sum proof of extra costs justifies the denial of any recovery if on the record any substantial part of the added cost of performance was chargeable to non-actionable causes rather than to any breach of contract by Mellon.

According to Southern's own evidence and argument, the first thing that made its work more costly was an original delay of six months in making the structure ready for the beginning of masonry work, even on a piecemeal basis. The contract contemplated the beginning of the masonry work in July 1956, but Southern was not authorized to proceed until January 1957. Certainly, whatever extra expense resulted from this delay could not have been avoided by suspending or further postponing work in the early months of 1957 as Southern requested. One damaging direct consequence of this and subsequent delays is disclosed in a letter written by Southern on December 27, 1957, transmitting to Mellon an invoice for the aggregate increased cost of the masonry work. The letter recites as one reason for the extra cost that "the period of performance of this work has been delayed and extended so as to project the work into a period of higher wages". Whatever may be said of other items of added expense, it is clear that this escalation of wages is a circumstance chargeable directly to delay and not to any actionable wrong of Mellon. Indeed, this added expense would have been increased rather than obviated by the requested further delay of masonry work until the other trades should complete their operations.

In addition, Southern introduced both oral testimony and certain letters to support a claim that added costs of performance were imposed upon it by the abnormally high standard of workmanship demanded by a particular inspector, a functionary who was responsible to the owner and the architect rather than to Mellon. Moreover, it appears without contradiction that when Southern complained to Mellon that this inspector's demands were unreasonable and were

making the masonry work more costly, Mellon joined in remonstrating with the inspector. Certainly there was no breach by Mellon in connection with this cause of added expense. Yet, this expense is an integral and inseparable part of the added cost proved as a lump sum.

Southern also introduced evidence that the masonry work was delayed, disrupted and disorganized by 192 change orders issued for other trades during the two-year course of the building project, as well as by long periods of waiting while the architect held under advisement questions which arose from time to time concerning work and materials. These incidents involved no breach of contract by Mellon. They occurred over a long period both before and after Southern's unsuccessful efforts to have the masonry work postponed. The costly interference of at least some of these events with the progress of the masonry work seems to have been unrelated to Southern's requests for suspension of its work during the early months of 1957. Thus, even on Southern's theory, some of the resulting damage cannot be charged to Mellon.

■ On the whole record, we think the court was justified in concluding that a substantial amount of the lump sum which Southern proved as the extra cost of the masonry work was the consequence of factors other than a breach or breaches of contract by Mellon. Since the court could find no basis for allocation of this lump sum between those causes which were actionable and those which were not, it was proper to reject the entire claim. Kremer v. United States, 1950, 88 F.Supp. 740, 116 Ct.Cl. 358, J. J. Kelly Co. v. United States, 1947, 69 F. Supp. 117, 107 Ct.Cl. 594.

It remains to consider the decision of the court below allowing a part of the claim based on the separate contract for exterior stone work. The amended complaint alleged that Mellon "failed to make ready the stone work and the various parts thereof * * * and required and compelled plaintiffs to perform said stone work * * * under different conditions than were contemplated by the parties at the time the said contract was entered into * * *." Southern claimed $10,332 for extra costs incurred in performing the stone contract. As in the case of the masonry contract, this sum was the entire difference between the actual cost of the work and an estimate of what the job would have cost if it had proceeded in a normal way. The court below awarded Southern $6380 as the extra cost of stone work attributable to Mellon's breach of contract. Southern's contention on this appeal is that it should have been awarded the entire amount of its claim.

The record shows and the court found that it was Mellon's contractual responsibility to prepare the structure for stone work by affixing angle irons to the spandrel beams. The court also found, with adequate basis in the record, that Mellon negligently and improperly performed its work so that these structures were not level and not in line as required for proper stone setting. This breach of duty on the part of Mellon made the performance of stone setting more expensive. On this appeal Mellon does not contest the recovery of this added cost.

The basic issue now is whether the entire extra cost of the stone work was caused by the improper preparation of the structure for stone setting, or whether other items not chargeable to any fault of Mellon contributed to the $10,-332 total of Southern's claim. The court found that there were additional non-compensable factors which constituted part of the added cost of the stone work. There is support for that finding in evidence that delays made it necessary to perform exterior stone work during winter weather, although the original schedule contemplated that this work would be performed more cheaply and efficiently before the onset of bad weather. There was also testimony by one of the plaintiffs that the rejection of certain stone and the location of a particular hoist added to the cost of the stone work. But the court properly concluded that these occurrences involved no breach of contract by Mellon.

██ Once it had thus been established that only part of the $10,332 claim represented extra cost chargeable to Mellon, the one question remaining was whether a reasonable allocation of part of the total sum was possible. The court undertook such an allocation, guided by evidence concerning the extra time required for the performance of the stone contract as the result of the improper shelf angles. We cannot say that this was an arbitrary method of allocation. Indeed, Southern is not in position to complain that the allocation was imprecise since it bore the burden of proving how much of the extra cost resulted from Mellon's improper conduct. Southern risked the loss of its entire claim, as occurred with reference to the masonry contract, if the court should not have been able to make a reasonable allocation. In this view of the matter it was to Southern's advantage that the court found sufficient basis for approximation of the damage chargeable to Mellon's breach and did not reject the entire claim because the nature of the proof made allocation difficult. Cf. Chalender v. United States, 1954, 119 F.Supp. 186, 127 Ct.Cl. 557.

For these reasons the judgment will be affirmed.