**LBL SKYSYSTEMS (USA), INC.**
**Plaintiff/Defendant on**
**Counterclaim,**

v.

**APG–AMERICA, INC., and Sentry**
**Select Insurance Company**
**Defendants,**

**APG–America, Inc. Plaintiff**
**on Counterclaim,**

v.

**XL Specialty Insurance Company and**
**NAC Reinsurance Corporation**
**Defendants on Counterclaim.**

No. Civ.A. 02–5379.

United States District Court,
E.D. Pennsylvania.

May 25, 2004.

Michael S. Saltzman, Fineman Bach, PC, Philadelphia, PA, H. Hugh Mcconnell, James F. Harrington, Siegfried Rivera Lerner Delatorre & Sobel PA, Stuart H. Sobel, Siegfried, Rivera, Lerner, et al., Coral Gables, FL, for Plaintiff.

Daniel J. Bender, David Hilton Wise, Lewis & Roberts PLLC, Fairfax, VA, Thomas M. Guinan, Howland Hess Guinan & Torpey, Huntingdon Vly, PA, Thomas B. Salzer, Glassboro, NJ, Basil A. Disipio, Lavin Coleman O'Neil Ricci Finarelli & Gray, Philadelphia, PA, Gary Yale Wirth, Jason S. Samuels, Kevin Michael Gary, Michael S. Torre, Robert Mark Wasko, Sean P. Kelley, Torre Lentz Gamell Gary & Rittmaster LLP, Jericho, NY, for Defendants.

### MEMORANDUM

DUBOIS, District Judge.

## I. BACKGROUND:

This case arises out of a dispute between two contractors, LBL Skysystems (USA) Inc. ("LBL") and APG–America, Inc. ("APG"), and APG's surety, Sentry Select Insurance Company ("Sentry Select").[1] LBL is a New York corporation with its principal place of business in Boisdes–Filion, Quebec, Canada. Complaint ¶ 1. APG is a New Jersey corporation with its principal place of business in New Jersey. Id. at ¶ 2. Sentry Select is a an Illinois corporation with its principal place of business in Illinois. Id. at ¶ 3.

On December 22, 1999, LBL entered into a written contract ("Prime Contract") with U.S. Airways, Inc. ("USAir") for the provision of construction services pertaining to the curtainwall, metal panels, skylights and louvers at the project known as the Philadelphia International Airport, International Terminal One ("Philadelphia Airport Project"). Id. ¶ 7.

On December 21, 1999, LBL entered into a written subcontract with APG for the designing, engineering, fabrication and installation of a steel metal panel wall system at the Philadelphia Airport Project in the amount of $9,919,390 ("Subcontract"). Complaint at ¶ 8; APG–America, Inc.'s Opposition to LBL Skysystems (USA), Inc.'s Motion for Partial Summary Judgment at 6. As part of its obligations under the Subcontract, APG provided performance and payment bonds. On December 10, 1999, APG as principal, and Sentry Select, as surety, furnished bonds numbered 7070–10219 and 0707–10220 ("Performance Bonds") for the benefit and protection of LBL as obligee. Id. at ¶ 9.

The dispute arose over the scope of APG's work under the Subcontract. LBL's Mot. For Part. Summ. Judg. on LBL's Compl. and APG's Counterclaim and Incorp. Mem. of Law at 3; APG–America, Inc.'s Opposition to LBL Skysystems (USA), Inc.'s Motion for Partial Summary Judgment at 1. The parties agree that under the Subcontract APG was to provide the insulated metal panels for all areas of the Philadelphia Airport Project. The parties disagree as to whether, and in what areas of the airport, APG was obligated to provide what LBL describes as "backup support" steel and what APG describes as "structural steel" to support the insulated metal panels. LBL's Mot. For

---

1. In its counterclaims, APG also names LBL's sureties, XL Speciality Insurance Company and NAC Reinsurance Corporation, as defendants. However, the motions the Court addresses in this Memorandum do not make reference to either party.

Part. Summ. Judg. on LBL's Compl. and APG's Counterclaim and Incorp. Mem. of Law at 3; APG–America, Inc.'s Opposition to LBL Skysystems (USA), Inc.'s Motion for Partial Summary Judgment at 6.

On April 4, 2002, two years after the Subcontract was signed and after work on the Philadelphia Airport Project had begun, APG sent LBL a letter stating that structural steel for certain areas in the terminal were not within the scope of the Subcontract and that APG would not supply and install that steel without additional compensation. LBL's Mot. For Part. Summ. Judg. Against Sentry Select Ins. Co. and Incorp. Mem. of Law at 3; APG–America, Inc.'s Opposition to LBL Skysystems (USA), Inc.'s Motion for Partial Summary Judgment at 11. After several months of discussion, on June 27, 2002, LBL terminated APG's right to complete the Subcontract. LBL's Mot. For Part. Summ. Judg. Against Sentry Select Ins. Co. and Incorp. Mem. of Law at 4; APG–America, Inc.'s Opposition to LBL Skysystems (USA), Inc.'s Motion for Partial Summary Judgment at 12

Shortly after the June 27, 2002 termination, LBL called on Sentry Select to complete performance under the Performance Bonds. LBL's Mot. For Part. Summ. Judg. Against Sentry Select Ins. Co. and Incorp. Mem. of Law at 4; APG–America, Inc.'s Opposition to LBL Skysystems (USA), Inc.'s Motion for Partial Summary Judgment at 12. Sentry Select responded by questioning the specific basis for termination. LBL's Mot. For Part. Summ. Judg. Against Sentry Select Ins. Co. and Incorp. Mem. of Law at 8. Thereafter, after several months of investigation, Sentry Select elected to deny liability under the Performance Bonds. *Id.* at 9.

On August 29, 2002, LBL filed the present Amended Complaint against APG and Sentry Select for damages claiming that APG breached the Subcontract and Sentry Select breached the Performance Bonds by refusing to complete the full scope of APG's work. LBL's Amended Complaint.

APG filed several counterclaims seeking damages from LBL and its sureties, XL Specialty Insurance Company and NAC Reinsurance Corporation, contending *inter alia* that APG was not in breach, that it was wrongfully terminated for cause, and that the manner in which LBL terminated the Subcontract was procedurally improper. APG's Amended Answer, Affirmative Defenses and Counterclaim to Plaintiff's Amended Complaint.

On November 28, 2003, LBL filed a Motion for Partial Summary Judgment on LBL's Complaint and APG's Counterclaim and Incorporated Memorandum of Law (Docket No. 78).

On December 2, 2003, LBL filed a Motion for Partial Summary Judgment Against Sentry Select Insurance Company and Incorporated Memorandum of law (Docket No. 79).

On January 30, 2004, APG filed a Motion for Partial Summary Judgment Against LBL Skysystems (USA) Inc. (Docket No. 94).

On January 30, 2004, Sentry Select filed a Motion for Partial Summary Judgment Against Plaintiff LBL Skysystems (USA) Inc. Dismissing Plaintiff's Claims Against Defendants for Damages for "Lost Settlement Opportunity" (Docket No. 85).

This Memorandum addresses these four partial summary judgment motions. For the reasons set forth below, the Court denies LBL's Motion for Partial Summary Judgment on LBL's Complaint and APG's Counterclaim, denies LBL's Motion for Partial Summary Judgment Against Sentry Select Insurance Company, grants in part and denies in part APG–America, Inc.'s Motion for Partial Summary Judg-

ment Against LBL Skysystems (USA) Inc. and grants Sentry Select Insurance Company's Motion for Partial Summary Judgment Against Plaintiff LBL Skysystems (USA) Inc. Dismissing Plaintiff's Claims Against Defendants for Damages for "Lost Settlement Opportunity".

## II. STANDARD OF REVIEW

"[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" summary judgment should be granted. Fed.R.Civ.P. 56(c). The Supreme Court describes the summary judgment determination as "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A Court may grant summary judgment if the non-moving party fails to make a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making this determination, the non-moving party is entitled to all reasonable inferences. *Pollock v. Am. Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). A court may not, however, make credibility determinations or weight the evidence in making its determination. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

## III. DISCUSSION

### A. LBL's MOTION FOR PARTIAL SUMMARY JUDGMENT ON LBL'S COMPLAINT AND APG'S COUNTERCLAIM

■ LBL has moved for partial summary judgment on its claims against APG and on APG's counterclaims. Plaintiff argues that the Court should rule as a matter of law: (1) APG's interpretation of the scope of its work under the Subcontract is incorrect; (2) APG breached the Subcontract by refusing to complete its work; (3) LBL's termination of APG was both substantively and procedurally proper; and (4) LBL is entitled to contract damages in the amount of, at least, $2,945,345. These issues are at the heart of the dispute between LBL and APG. APG challenges each of them and offers in its Opposition evidence revealing genuine disputes of material fact exist as to each of LBL's assertions. See APG–America, Inc.'s Opposition to LBL Skysystems (USA), Inc.'s Motion for Partial Summary Judgment (docket no. 89, filed 01/30/04). Therefore, the Court will not grant summary judgment on LBL's claims against APG.

■ LBL has also moved for summary judgment on APG's counterclaims. In APG America, Inc.'s, Answer, Affirmative Defense and Counterclaim to Plaintiff's Amended Complaint, APG asserted seven counterclaims: Count I seeks to recover the unpaid balance of the Subcontract; Count II seeks the compensation for work APG undertook that it claims was outside the Subcontract; Count III, based on the premise that LBL failed to pay the contract balance, seeks statutory interest and penalties pursuant to the Contractor and Subcontractor Payment Act;[2] Count IV

---

**2.** The Contractor and Subcontractor Payment     Act (CSPA) imposes a contractor penalty of

alleges wrongful termination and seeks damages for APG's impaired bonding capacity; Counts V and VI seek recovery based on the related theories of unjust enrichment and quantum meruit; and Count VII seeks damages for alleged breaches of LBL's implied duty of good faith and fair dealing, based on various incidents that occurred while APG was working on the project.

Some, but not all, of these counterclaims mirror LBL's claims. With respect to such counterclaims, just as summary judgment is inappropriate on LBL's claims, it is inappropriate on APG's counterclaims. Those counterclaims that do not mirror LBL's claims also present genuine issues of material fact. In sum, the Court concludes that genuine disputes of material fact exists as to each of APG's counterclaims and therefore declines to grant summary judgment on APG's counterclaims.

### B. LBL's MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST SENTRY SELECT INSURANCE COMPANY

■ LBL has moved for partial summary judgment against APG's surety, Sentry Select. LBL seeks summary judgment on the issue of liability under the Performance Bonds. LBL's Mot. For Summ. Judg. Against Sentry Select Ins. Co. at 9. Having ruled that summary judgment is not appropriate on the issue of APG's liability for breach of contract, the Court concludes that summary judgment is similarly inappropriate on the liability of APG's surety, Sentry Select.

■ LBL has also moved for summary judgment on Sentry Select's affirmative defenses. LBL's Mot. For Summ. Judg. Against Sentry Select Ins. Co. at 10. In Defendant Sentry Select Insurance Company's Answer to LBL Skysystems (USA), Inc.'s Amended Complaint, Sentry Select raised nine affirmative defenses: (1) plaintiff has failed to state a claim for which relief can be granted: (2) LBL's claims against Sentry Select are barred because LBL failed to comply with the requirements of paragraph 3 of the Performance Bond (which outlines the procedures LBL must follow to trigger surety's obligations under the bonds); (4) the court lacks subject matter jurisdiction over the action; (5) LBL's claims are barred by the doctrines of waiver, estoppel and laches; (6) LBL's claims are barred because of its failure to mitigate damages; (7) LBL's claims are not the result of actions by APG or Sentry Select; (8) LBL's claims against Sentry Select are barred because of material and cardinal changes to the contractual relationship between LBL and APG that occurred without the knowledge or consent of Sentry Select; and (9) Sentry Select asserts by way of affirmative defense all of APG's counterclaims. LBL challenges each of these affirmative defenses and has offered evidence in support of its position.

The Court grants LBL's motion as to Sentry Select's first affirmative defense—LBL has failed to state a claim upon which relief can be granted. The Court concludes that LBL has met its burden of pleading under the Federal Rules of Civil Procedure. Therefore, the Court dismisses Sentry Select's first affirmative defense.

1% per month of any amount that is wrongfully withheld from a subcontractor. Moreover, the CPSA allows a contractor, such as LBL, to withhold payment for a deficiency in the work and proves that an mount is not deemed to have been wrongfully withheld if it bears a reasonable relation to such good faith claim that the contractor may have against the subcontractor.

The Court also concludes that, on the current state of the record, summary judgment is appropriate on Sentry Select's fourth affirmative defense—the court lacks subject matter jurisdiction over the action. Therefore, the Court dismisses Sentry Select's fourth affirmative defense. In so ruling, the Court notes that Sentry Select in its Opposition to LBL's Motion for Summary Judgment mentions that there might not be diversity of citizenship between Sentry Select and XL Specialty Insurance Company ("XL"), LBL's surety and a defendant on counterclaims filed by APG. Def. Sentry Select Ins. Co.'s Resp. and Mem. of Law in Opp. To Pl.'s Mot. For Partial Summ. Judg. 31–32. However, Sentry Select states in its Opposition that it takes no position as to whether there is diversity as to XL and, if not, whether XL is an indispensable party. *Id.* at 32. Since a party may raise subject matter jurisdiction at any time, any party may raise this issue at a later date.

The Court declines to grant summary judgment for LBL on Sentry Select's remaining affirmative defenses. The parties have presented genuine issues of material fact with regard to the affirmative defenses. The Court will consider only those affirmative defenses for which there is evidentiary support.

## C. APG'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In its Motion for Partial Summary Judgment, APG asks the Court (1) for partial summary judgment in its favor as to both liability and damages for $254,396.13 in "change orders"[3] that APG submitted to LBL; (2) for partial summary judgment as to liability alone for several other change orders that were submitted by APG to LBL during the course of the construction project; and (3) to dismiss LBL's claims for damages for "lost settlement opportunity" in the amount of $8,960,378.

### 1. *Change Orders*

█ APG seeks partial summary judgment at to both liability and damages on $254,396.13 in change orders that it submitted to LBL. APG asserts that USAir compensated LBL for change orders that included APG's change orders but LBL failed to pass such payments on to APG. APG–America's Mot. For Partial Summary Judgment Against LBL Skysystems (USA), Inc. at 8–10. APG also seeks summary judgment on liability only for other specific change orders it identifies in its Motion for Partial Summary Judgment against LBL. *Id.*

In its opposition LBL states that it has given credit to APG for the change orders submitted to and paid by USAir. As for the other change orders, LBL disputes the amounts APG seeks. LBL's Resp. In Opp. To APG's Mot. For Part. Sum. Judgment Against LBL and to Sentry's Mot. For Part. Sum. Judg. Against LBL at 18 and 21.

The Court concludes that a genuine issue of material fact exists as to these change orders. Therefore, the Court will not grant summary judgment as to either liability or damages on these change orders.

### 2. *Lost Settlement Opportunity*

█ APG joins in the motion filed by Sentry Select requesting dismissal of the $8,960,378 in damages asserted by LBL

---

**3.** A change order is a written order to the general contractor authorizing a change in the work to be performed under the contract or an adjustment to the contract sum or contract time. *Allied Fire & Safety Equipment Co., Inc. v. Dick Enterprises, Inc.,* 972 F.Supp. 922 n. 5 (E.D.Pa.1997) citing Article 1, General Conditions, Prime Contract.

against both APG and Sentry which LBL describes as damages for "lost settlement opportunity." [4] APG–America's Mot. For Partial Summary Judgment Against LBL Skysystems (USA), Inc. at 16.

According to LBL, its claims for lost settlement opportunity against APG and Sentry Select arise out of LBL's claims for unpaid work with USAir, the owner of the Philadelphia International Airport Terminal One project. LBL's Resp. In Opp. To APG's Mot. For Part. Sum. Judgment Against LBL and to Sentry's Mot. For Part. Sum. Judg. Against LBL at 5. As of August 2002, LBL had claims for unpaid work against USAir in the amount of $12,543,721. *Id.* at 8. After terminating APG on June 27, 2002, LBL assumed responsibility for completing the work formerly covered by the Subcontract with APG. *Id.* at 6. According to Louis Brais, LBL's former Vice President of Construction, completing APG's work placed a "severe strain on LBL's working capital." *Id.* at 6–7 Mr. Brais testified further, that "[l]acking working capital for completing both its own scope and APG's, LBL had no readily available means of obtaining the additional funds other than through negotiating the claims it had pending against U.S. Airways at the time of APG's termination." *Id.* at 8. LBL ultimately settled its claims against USAir for $3,583,343. LBL seeks the $8,960,378 difference (the $12,543,721 it maintains it was owed by USAir less the $3,583,343 for which it settled those claims) from defendants.

APG incorporates by reference the legal arguments made by Sentry Select in its Motion for Partial Summary Judgment. In that Motion, Sentry Select asks the Court to rule, as a matter of law, that LBL is not entitled to recovery from Sentry and/or APG for alleged "lost settlement opportunity" in LBL's claims against USAir. Def. Sentry Select Ins. Co.'s Mot. For Part. Summ. Judg. Against Pl. LBL Skysystems (USA), Inc. Dismissing Pl.'s Claims Against Defendants for "Lost Settlement Opportunity." Sentry Select argues that LBL has failed to make a factual showing sufficient to establish three essential elements of a damages claim: (1) causation; (2) foreseeability; and (3) that the "lost settlement opportunity" damages are capable of being proven with reasonable certainty.

**a. LBL Has Failed to Make a Factual Showing Sufficient to Establish that APG's Actions Were the Proximate Cause of the "Lost Settlement Opportunity" Damages**

Under Pennsylvania law, "damages sought must be a proximate consequent of the breach, not merely remote or possible...." *National Controls Corp. v. National Semiconductor Corp.,* 833 F.2d 491, 496 (3d Cir.1987); *see also, Advent Sys. Limited v. Unisys Corp.,* 925 F.2d 670, 681 (3d Cir.1991). In cases where multiple factors caused a loss "[t]he burden is on the plaintiff to establish proximate cause between breach and damage and if the loss caused by breach cannot be isolated from that attributable to other factors, no damages may be awarded." *S.J. Groves & Sons Co. v. Warner Co.,* 576 F.2d 524 (3d Cir.1978); *Lichter v. Mellon–Stuart Co.,* 305 F.2d 216 (3d Cir.1962).

According to LBL's project manager at the Philadelphia International Airport and its Vice President for Finance, LBL's decision to settle with USAir was the product

4. According to LBL's response to APG's second set of interrogatories, LBL is claiming $8,960,378 in damages for lost settlement opportunity. Def. Sentry Select Ins. Co.'s Mot. For Partial Summary Judgment Against Plaintiff LBL Skysystems (USA), Inc. Dismissing Pl.'s Claims for "Lost Settlement Opportunity", Exhibit 6.

of numerous factors in addition to APG's alleged breach including USAir's financial situation, USAir's withholding of payments due to LBL and demands placed on LBL's working capital by litigation over another project and work occurring simultaneously on the "Brooklyn Courthouse" project.

LBL's project manager at the Philadelphia International Airport, Salvatore Alibrando, testified in his deposition that LBL's decision to settle with USAir was caused in part by USAir's financial difficulties. Mr. Alibrando explained:

> we had basically no choice but to accept this global settlement [with USAir] for two reasons: One reason being U.S. Airways saying that they were in bankruptcy and they needed us to sign this deal or, you know, get in line with the list of creditors. That's exactly what they said. [The other factor was APG's breach].

Def. Sentry Select Ins. Co.'s Mot. For Partial Summary Judgment Against Plaintiff LBL Skysystems (USA), Inc. Dismissing Pl.'s Claims for "Lost Settlement Opportunity", Exhibit 8 (Deposition of Salvatore Alibrando 290:3–11). USAir's representative for the project, Ken Wiseman, stated in his deposition that while he does not remember making such a statement to LBL, the statement itself is true. *Id.* Exhibit 9 (Deposition of Kenneth Wiseman 150:5–14).

LBL's Senior Vice President for Finance Marc Laprise also stated in his deposition that, LBL's financial difficulties were caused in part by USAir. Mr. Laprise testified that after LBL terminated APG there was "pressure" from USAir to meet project deadlines. Mr. Laprise further explained that "one of [USAir's] tactics to put pressure on LBL was to not pay LBL or delay payment." *Id.* at Exhibit 10 (Deposition of Marc Laprise 91:13). According to Mr. Laprise, LBL was expect-

ing a payment of $2 million from USAir at that time, but the payment was delayed.

Mr. Laprise further testified that other factors contributed to LBL's shortage of working capital. These included litigation involving another project on which LBL had worked and the "Brooklyn Courthouse" project that LBL was working on at the same time it was working on the Philadelphia Airport project. *Id.* at Exhibit 10 (Deposition of Marc Laprise 91:22–24).

LBL does not address what percentage of the lost settlement opportunity is attributable to APG's breach and what percentages are attributable to these multiple other factors. Therefore, as to defendants' first argument—that LBL has failed to establish causation—the Court concludes that LBL has failed to make a factual showing sufficient to establish this essential element.

**b. LBL Has Failed to Make a Factual Showing Sufficient to Establish that the "Lost Settlement Opportunity" Damages Were Reasonably Foreseeable When the Parties Entered into the Subcontract**

Pennsylvania law distinguishes "between general damages—those ordinary damages that flow directly from the breach; and special or consequential damages—those collateral losses, such as expenses incurred or gains prevented which result from the breach." *McDermott v. Party City Corp.,* 11 F.Supp.2d 612, 624 (E.D.Pa.1998) (citing *Fort Washington Resources v. Tannen,* 901 F.Supp. 932, 943 (E.D.Pa.1995)). The essential elements of a claim for consequential damages are that defendant had reason to know of the special circumstances causing the loss and that the injury was foreseeable. *Id.; Hadley v. Baxendale,* 9 Exch. 341 (1854). Foreseeability is to be determined from the point in time

when the contract was formed. *McDermott,* 11 F.Supp.2d at 624; *Tannen,* 901 F.Supp. at 943; *Hazleton Area School District v. Bosak,* 671 A.2d 277, 282 (1996).

Lost settlement opportunity damages are a form of consequential damages. It is undisputed that these damages did not flow directly from APG's breach but rather caused a working capital shortage that in turn caused LBL to settle its claims with USAir. Therefore, the question the Court must address is whether these damages were reasonably foreseeable at the time the parties entered into the Subcontract.

Undoubtedly, litigation is common in the construction industry. However, to conclude that these damages were foreseeable one would have to conclude that in December 1999 APG had reason to know (1) that LBL would eventually have substantial claims against the owner of the project (USAir), (2) that both LBL and USAir would be experiencing financial difficulties; and (3) that LBL would decide to settle these substantial claims in order to receive an immediate inflow of cash. LBL offers no evidence to support any of these assertions. Further, the Court concludes:

> Parties, when they enter into contracts, may well be presumed to contemplate the ordinary and natural incidences and consequences of performance or nonperformance; but they are not supposed to know the condition of each other's affairs, nor to take into consideration any existing or contemplated transactions not communicated or known, with other persons. Few persons would enter into contracts of any considerable extent as to subject matter or time if they should thereby incidentally assume responsibili-

> ty of carrying out, or be legally held affected by other arrangement over which they have no control.

*McDermott v. Party City Corp.,* 11 F.Supp.2d 612 (E.D.Pa.1998). (citing *Ebasco Services, Inc. v. Pennsylvania Power & Light Co.,* 460 F.Supp. 163, 217 (E.D.Pa. 1978)) (quoting *Macchia v. Megow,* 355 Pa. 565, 50 A.2d 314, 316 (1947) (quoting Sutherland on Damages § 47 (4th ed.))).

LBL fails to cite a single case where, with facts similar to this one, a court found that "lost settlement opportunity" damages were reasonably foreseeable. In researching the issue the Court found that the term was used almost exclusively in legal malpractice cases. The Court did, however, find a recent decision from this district that involved facts analogous to the present case. In *McDermott v. Party City Corp.,* 11 F.Supp.2d 612 (E.D.Pa.1998), plaintiff store owners brought an action against their store manager for breach of contract and breach of fiduciary duty under Pennsylvania law. *Id.* at 617. Following defendant's alleged breach of contract, plaintiffs liquidated the store they had hired defendant to operate. When plaintiffs closed the store they were required to pay a bank loan they had obtained to run the business. To pay the loan, plaintiffs sold mutual funds pledged as security and experienced a loss of $17,500. The jury found in favor of plaintiffs and, among other damages, awarded plaintiffs $17,500 to cover the mutual fund losses.

On defendant's motion for judgment as a matter of law under Fed.R.Civ.Proc. 50(b) the Court reduced plaintiffs damages by $17,500 on the ground that these losses were not foreseeable.[5] Both the present

---

**5.** The standards for a judgment as a matter of law under Rule 50(b) mirrors the standard for summary judgment under rule Rule 56(e). A jury verdict can be displaced by judgment as a matter of law only if "the record is 'critical-

ly deficient of that minimum quantum of evidence from which the jury might reasonably afford relief.'" *McDermott,* 11 F.Supp.2d 612 (quoting *Dawson v. Chrysler Corp.,* 630 F.2d 950, 959 (3d Cir.1980) (quoting *Denneny*

case and *McDermott* involve a plaintiff suing a defendant for breach of contract. In both cases, the plaintiff claimed that defendant's breach caused cash flow problems that forced it to sustain losses, in *McDermott* by selling mutual funds at a loss and in the present case by settling with USAir for a lesser amount. In contrast to the present case, in *McDermott* plaintiffs claimed that defendant knew the mutual funds were pledged as security and thus, that fact was within the contemplation of the parties at the time the agreement was executed making it a stronger case for plaintiff. Nevertheless, the *McDermott* court rejected that argument and ruled, "[m]ere knowledge of one of the parties of a special situation, however, is not sufficient." *McDermott*, 11 F.Supp.2d at 625. The Court notes that knowledge on the part of APG is not alleged in this case.

Thus, as to defendants' second argument—that LBL has failed to establish that "lost settlement opportunity" damages were reasonably foreseeable—the Court concludes that LBL has failed· to make a factual showing sufficient to establish this essential element.

**c. LBL Has Failed to Make a Factual Showing Sufficient to Establish that the "Lost Settlement Opportunity" Damages Are Capable of Being Proven with Reasonable Certainty**

Under Pennsylvania law, an injured party is entitled to recover damages provided those damages can be proved with a "reasonable degree of certainty." *Ferrer v. Trustees of the Univ. of Pennsylvania*, 573 Pa. 310, 825 A.2d 591 (2002); Proof of damages need not be mathematically pre-

cise, but the evidence must establish the fact with "a fair degree of probability." *Advent*, 925 F.2d at 680 (citing *Exton Drive–In, Inc. v. Home Indemnity Co.*, 436 Pa. 480, 261 A.2d 319, 324 (1969) *cert denied* 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970)).

Despite that fact that LBL calculates the "lost settlement opportunity" damages to a precise dollar figure (by subtracting what the settlement it agreed to with USAir from what it claims USAir owed it), LBL offers no evidence that it could have reached a settlement with USAir for the full amount of its claims. LBL offers no evidence that all its claims were valid. Further, LBL's project manager Sam Alibrando testified that USAir delivered an ultimatum to LBL to accept its offer of approximately $3.5 million or "get in line" with other creditors when USAir went into bankruptcy. LBL does not even address the effect of USAir's financial position on its ability to collect on all its claims. Thus, the Court concludes that LBL has failed to make a factual showing sufficient to establish that the lost settlement opportunity damages are capable of being proven with reasonable certainty.

In sum, LBL has failed to meet its burden to make a factual showing sufficient to establish three essential elements of its damage claim: causation, foreseeability and reasonable certainty as to the amount of damages. Therefore, LBL may not pursue its claim for lost settlement opportunity against APG.

**D. SENTRY SELECT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Sentry Select's Motion for Partial Summary Judgment was filed "for the limited

---

*v. Siegel*, 407 F.2d 433, 439 (3d Cir.1969)), *cert denied* 450 U.S. 959, 101 S.Ct. 1418, 67

L.Ed.2d 383 (1981)).

purpose of obtaining a Court Order, determining that the damages alleged by plaintiff to have arisen from a purported lost settlement opportunity is not covered under the Performance Bond." See Defendant Sentry Select Insurance Company's Motion for Partial Summary Judgment Against Plaintiff LBL Skysystems (USA) Inc. Dismissing Plaintiff's Claims Against Defendants for Damages for "Lost Settlement Opportunity". The motion seeks dismissal of the claim for such damages or a declaration that such damages are not recoverable.

Under Pennsylvania law, a surety's obligations are limited to those specific obligations detailed in the bond itself. *Ragan v. Tri–County Excavating, Inc.,* 62 F.3d 501, 513 (3d Cir.1995); *Reliance Universal, Inc. v. Ernest Renda Contracting Co., Inc.,* 308 Pa.Super. 98, 454 A.2d 39, 45 (1982). Pennsylvania law clearly establishes that "[a] bond given pursuant to a contract incorporated in the bond will be construed in the light of the terms of the contract and the attendant circumstances, but the obligation of a bond cannot be extended beyond the plain import of the words used." *Wise Investments, Inc. v. Bracy Contracting, Inc.,* 232 F.Supp.2d 390, 402–403 (3d Cir.2002); *Peter J. Mascaro Co. v. Milonas,* 401 Pa. 632, 166 A.2d 15, 17 (1960). "Obligations not imposed by the terms of the bond cannot be created by judicial construction or interpretation which extends the terms beyond their normal meaning." *Wise Investments,* 232 F.Supp.2d at 402–403.

Both Performance Bonds contain the following clause stating Sentry Select's obligation:

> The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner [LBL] for performance of the Construction Contract [Subcontract], which is incorporated herein by reference.

Def. Sentry Select Ins. Co.'s Mot. For Part. Summ. Judg. Against Pl. LBL Skysystems (USA), Inc. Dismissing Pl.'s Claims Against Defendants for "Lost Settlement Opportunity" Exhibit 1 (the 0707–10219 bond at ¶ 2) and Exhibit 2 (the 0707–10220 bond at ¶ 2). The Performance Bonds, in paragraph 5, also provide that in the event the surety denies liability, as was the case here, "the Owner shall be entitled to enforce any remedy available to the Owner." *Id.* Exhibit 1 (the 0707–10219 bond at ¶ 5)

The Court need not decide the scope of Sentry Select's obligation under the Performance Bonds because, for the reasons set forth above, lost settlement opportunity damages are not a remedy available to LBL. Similarly, pursuant to paragraph 5 of the bonds quoted above, LBL may not enforce this remedy against Sentry Select. Therefore, as a matter of law, LBL may not pursue its claim for lost settlement opportunity against Sentry Select.

## IV. CONCLUSION

For the reasons outlined above, the Court denies LBL's Motion for Partial Summary Judgment on LBL's Complaint and APG's Counterclaim, denies LBL's Motion for Partial Summary Judgment Against Sentry Select Insurance Company, grants in part and denies in part APG–America, Inc.'s Motion for Partial Summary Judgment Against LBL Skysystems (USA) Inc. and grants Sentry Select Insurance Company's Motion for Partial Summary Judgment Against Plaintiff LBL Skysystems (USA) Inc. Dismissing Plaintiff's Claims Against Defendants for Damages for "Lost Settlement Opportunity".

An appropriate Order follows.