NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No: 20-1894
_____

THE 1228 INVESTMENT GROUP LP

v.

IDT DOMESTIC TELECOM,
                                    Appellant

v.

THE IT SUPPORT CENTER LLC
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania,
Docket No. 2:18-cv-02745-CMR
District Judge: Honorable Cynthia M. Rufe
_____

Submitted Under Third Circuit LAR 34.1(a)
January 26, 2021

Before:   JORDAN, MATEY, *Circuit Judges*
and HORAN,[*] *District Judge*.

(Filed April 23, 2021)
_____

OPINION[**]

_____

[*] Honorable Marilyn Horan, United States District Judge for the Western District
of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

_____

HORAN, *District Judge*.

Defendant-Appellant, IDT Domestic Telecom, Inc. (IDT), appeals from the United States District Court for the Eastern District of Pennsylvania's June 17, 2019 Judgment awarding damages and attorneys' fees and costs in favor of the Plaintiff-Appellee, The 1228 Investment Group, LP (1228). For the reasons that follow, we will reverse the District Court's calculation of damages and remand for further determination of attorneys' fees and costs consistent with the rulings herein.

## I.    BACKGROUND

This breach of contract action involves a dispute over the February 15, 2018 Support Services Agreement between IDT and the IT Support Center, LLC (IT Support Center). 1228 is the assignee of the IT Support Center's rights under said Agreement.

Prior to entering the February 15, 2018 Agreement, IDT and the IT Support Center conducted substantial discussions and negotiations. The Agreement required the IT Support Center to provide telephonic information technology help desk support services to IDT employees. Pursuant to the Agreement, IDT was required to purchase a minimum of 1,100 units of support services at a cost of $3,000.00 per month. In addition, any units used over the minimum number of units was to be billed at a rate of $2.95 per unit as specified in the Agreement. At any time during the Agreement, IDT was permitted to seek adjustment of the monthly minimum commitment of units, subject to concurrence by the IT Support Center. The IT Support Center was to invoice IDT on a monthly basis for the 1,100-minimum guaranteed monthly units of support services, $3,000.00, plus any

additional charges in the event any units were used over the minimum. There was also a carry-over provision within the contract that allowed any unused and paid-for minimum units from a Billing Cycle to be carried forward as a credit towards the next Billing Cycle.

The contract contained an integration clause that stated as follows: "This Agreement constitutes the entire agreement between the parties, and supersedes all prior agreements, representations and understandings of the parties, written or oral." (App. at 204.) The contract also contained a limitations clause that stated: "Under no circumstances shall either party be liable to the other party or any third party for any special, inconsequential, punitive or indirect damages." (App. at 205.) Finally, the Agreement contained an attorneys' fee provision stating: "In the event ITSC incurs any legal fees or expenses as a result of the enforcement of this Agreement, ITSC shall be entitled to reimbursement for any and all such reasonable legal fees and expenses." (App. at 207.)

Services under the Agreement went live on May 1, 2018. The IT Support Center's help desk phone lines were opened up, and IDT employees began using the help desk to resolve information technology issues. However, due to a security concern about password protection for the help desk tickets, IDT discontinued its employees' access to the IT Support Center help desk two days later, on May 3, 2018. The IDT employees placed 54 calls averaging 9.7 units per call during the first two days of the contract. For the first month, the IT Support Center invoiced IDT for the 1,100-minimum number of units, $3,000.00, as provided for in the Agreement.

On May 29, 2018, 1228 filed suit in the Court of Common Pleas of Montgomery County, Pennsylvania seeking damages under the contract. On June 28, 2018, IDT removed the matter to the United States District Court for the Eastern District of Pennsylvania. On August 13, 2018, while litigation was pending, IDT made an Offer of Judgment to 1228 for $20,000.00. 1228 rejected the Offer of Judgment, and the case proceeded to a one-day non-jury trial on April 17, 2019.

During the trial, 1228 called Jeffrey Becker, director of the IT Support Center and general partner of 1228, to testify. During the liability phase of the trial, 1228 attempted to introduce evidence of earlier drafts of the contract. The District Judge challenged the relevance of this line of questioning, stating, "we all know that the final contract is the one that matters." (App. at 83.) Later, in the damages portion of the trial, 1228 sought to introduce the "New Account Baseline Setup Form" (Form) into evidence and to secure Mr. Becker's testimony about said Form in support of its damages claim. The Form, which was submitted to the IT Support Center during contract negotiations, provided information about the number of IDT employee users and IDT's historical use of help desk tickets. Mr. Becker testified that the IT Support Center was only willing to "take the risk on this contract" after reviewing the Form. (App. at 93.) IDT's counsel made a hearsay objection to the admission of the Form and to Mr. Becker's testimony about it. The District Judge overruled the objection, allowed Mr. Becker's testimony, and admitted the Form. IDT called Mr. Anthony Davidson, IDT's executive vice president of commercial operations, to testify at trial. Mr. Davidson's testimony confirmed IDT's intention to manage costs. He testified, "We would have to keep an eye on what those

4

costs were and if they were exceeding our intended expenditure amount, then we would have to do something to curtail it." (App. at 167.)  Finally, he explained that "it was my understanding that it was, you know, our option to use or not use the service at the level that we thought made the most sense." (App. at 167-68.)

On June 17, 2019, the District Court issued its Findings of Fact and Conclusions of Law and determined that IDT was liable for breach of contract and breach of the covenant of good faith and fair dealing.  The District Court assessed damages for the $3,000.00 monthly minimum for the six-month contract term, equaling $18,000.00.  In addition, based upon the Form, Mr. Becker's testimony about his expectations, and IDT's actual usage during the first two days of the contract, the court found that the IT Support Center had a reasonable expectation interest of 7,857 units per month.  Whereupon, the court calculated and assessed additional expectation damages of $113,619.00.  Thus, the total damage award was $131,619.00 ($113,619.00 plus the Agreement's monthly minimum unit charge of $18,000.00).  Additionally, the Agreement provided for attorneys' fees, and the court determined and awarded attorneys' fees and costs in the amount of $26,166.18.  Judgment was entered in favor of 1228 and against IDT for $157,785.18.

On July 15, 2019, IDT filed a Post-Judgment Motion with the District Court requesting that the court reduce the damage award to $18,000.00.  In its Post-Judgment Motion, IDT argued that the District Court erred by considering the Form and Mr. Becker's testimony to vary the terms of the integrated Agreement.  IDT argued that such

consideration was impermissible under the parol evidence rule as well as the integration and limitation of damages clauses within the Agreement. IDT also argued that any attorneys' fee damages award must be limited in accordance with Federal Rule of Evidence Rule 68 since IDT made a $20,000.00 Offer of Judgment. On March 26, 2020, the District Court denied IDT's Motion and requests for relief. IDT filed its Notice of Appeal with the United States Court of Appeals for the Third Circuit on April 24, 2020.

There are three pertinent issues on appeal. First, did the District Court err in its construction of the Agreement by disregarding the Agreement's integration clause and awarding damages inconsistent with the express terms of the Agreement? Second, did the District Court err in its construction of the Agreement by disregarding the limitation of damages clause and awarding damages prohibited by the express terms of the Agreement? And third, should the District Court's award of attorneys' fees be limited because of IDT's Offer of Judgment?

## II. JURISDICTION

Diversity jurisdiction was not clearly established by the record below. Pursuant to 28 U.S.C. § 1653, the Court may allow a party leave to amend pleadings if there is a jurisdictional defect in the pleadings. On December 30, 2020, the Court ordered the parties to submit supplemental letter memoranda stating the basis for jurisdiction under 28 U.S.C. § 1332. The parties submitted supplemental letters explaining the basis for jurisdiction and identifying the citizenship of each of the parties. This Court has permitted the parties to amend the pleadings by submitting a declaration. Jeffrey Becker, general partner of 1228 and director and member of the IT Support Center, filed a

6

declaration identifying the citizenship of each of the 1228 partners, which confirmed diversity jurisdiction. Accordingly, pursuant to 28 U.S.C. § 1332(a), we have subject matter jurisdiction to proceed.

### III. STANDARD OF REVIEW

A district court's construction of a contract is a question of law, subject to a de novo review by this Court. *In re Nat'l Collegiate Student Loan Trusts*, 971 F.3d 433, 443 (3d Cir. 2020). A district court's interpretation of a contract is reviewed by this Court under the clearly erroneous standard. *John F. Harkins Co. v. Waldinger Corp.*, 796 F.2d 657, 659 (3d Cir. 1986).

### IV. DISCUSSION

The court below considered Mr. Becker's testimony and documentary evidence about pre-contract discussions to support its award of expectation damages. IDT argues that the court erred in considering such evidence because, in doing so, it disregarded the Agreement's integration and limitations of damages clauses and violated the parol evidence rule. 1228 argues that there was no error, and that the contract interpretation and damages award were correct.

"Contract interpretation involves determining the meaning of the contract language and giving effect to the parties' intent. Construction of a contract goes beyond interpretation and requires determining the legal effect and consequences of contractual provisions." *Id.* (internal citation omitted). "When an ambiguity exists in the agreement, the problem is one of interpretation. If, however, the terms are clear, construction of the contract determines its legal operation." *Garden State Tanning, Inc. v. Mitchell Mfg.*

7

*Grp., Inc.*, 273 F.3d 332, 335 (3d Cir. 2001) (citing *Ram Constr. Co., Inc. v. Am. States Ins. Co.*, 749 F.2d 1049, 1052-53 (3d Cir. 1984)). "An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004). Where the language of the contract is "clear and unambiguous, the focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended." *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982).

Resolving the parol evidence issue in this case requires interpretation of the Agreement and application of its integration clause. The parol evidence rule is a rule of substantive law which prevents adding terms to a contract based upon any prior or contemporaneous oral agreements during contract formation. *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Invs.*, 951 F.2d 1399, 1405 (3d Cir. 1991). Absent an ambiguity in the contract, an integration clause triggers the parol evidence rule. *Yocca*, 854 A.2d at 436-37. "Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." *Id.*

In this case, there is no ambiguity in the Agreement as to the terms of the contract, thus 1228 is only entitled to damages directly provided for by the contract. The District Judge acknowledged at trial that the final contract was the only one relevant to resolve

8

the dispute. The Agreement only references and requires payment for 1,100-minimum monthly units. The Agreement clearly established the floor for the amount of money to be paid to the IT Support Center. The contract assured that the IT Support Center would receive a $3,000.00 minimum payment from IDT for each month of the six-month contract. The Agreement contains no requirement for usage of any additional minutes over and above the monthly minimum. As such, there was no bargained for exchange for any guaranteed usage beyond 1,100 units per month. Indeed, the Agreement also allowed for a carry-forward credit for any paid-for but unused units from the prior Billing Cycle. In such case, if IDT did not actually use the minimum 1,100 units in any month, credit for unused but paid-for units could be applied towards future billings. Such carry-forward credit provision clearly contradicts any intended contractual obligation for unit usage beyond the mandatory monthly minimum. Further, the Agreement only provided for an excess unit usage rate "[*i*]*n the event* that all monthly units described in paragraph 2, above, are exhausted prior to the end of a Billing Cycle." (App. at 203 (emphasis added)). Such language does not convey or create any obligation for IDT to exceed the minimum monthly usage. Thus, there is no question that the Agreement was clear and unambiguous such that parol evidence should not have been considered.

The District Court incorrectly considered parol evidence when it interpreted the contract to find IDT was liable to use and pay for additional minutes over the express 1,100-unit monthly minimum. If, as Mr. Becker testified, the IT Support Center could not make a profit on the guaranteed minimum, and if it relied on expected excess unit usage during the six-month contract, the IT Support Center should have included

9

language to express and establish such contractual obligation. Such a critical provision was not within the final integrated Agreement. Mr. Davidson's testimony supports that IDT had no intention to agree that IDT was required to utilize any units over the 1,100-monthly minimum. His intent was to monitor usage and manage expenses for IT Support Center help desk services during the six-month contract. The February 15, 2018 Agreement contains no provision to require IDT to use more than 1,100 units for each of the six months of the Agreement. The court's reliance on extra-contractual evidence to impose obligations not expressed within the integrated Agreement violated the parol evidence rule. As such, the District Court erred in imposing a contractual obligation for IDT to pay for "expected" usage above and beyond the guaranteed minimum.

In addition to violating the parol evidence rule, IDT argues that the District Court erred by disregarding the limitation clause when it found an expectation interest above the $18,000.00 six-month contract floor. 1228 argues that the District Court interpreted the contract correctly and there was no error in the damages award. "Under Pennsylvania law, clauses limiting damages in commercial settings are generally enforced." *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 262 (Pa. Super. Ct. 1997) (citing *N.Y. State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919 (1989) (en banc)). "Pennsylvania law distinguishes 'between general damages—those ordinary damages that flow directly from the breach; and special or consequential damages—those collateral losses, such as expenses incurred or gains prevented which result from the breach.'" *LBL Skysystems (USA), Inc. v. APG-Am., Inc.*, 319 F. Supp. 2d 515, 523 (E.D. Pa. 2004) (quoting *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 624 (E.D. Pa. 1998)). "The

10

expectation interest is not based on the injured party's hopes when he made the contract but on the actual value that the contract would have had to him had it been performed." Restatement (Second) of Contracts § 344 cmt b (1981).

In this case, there is no ambiguity concerning either the integration clause or the limitations clause within the contract. Thus, the IT Support Center is only entitled to direct damages under the contract. In that the contract only provided for total guaranteed minimum liability of $18,000.00, damages are limited to that amount. Thus, the District Court erred in awarding expectation damages of $131,619.00 where such were not agreed upon within the contract and where they were excluded by the limitation of damages clause.

Finally, regarding attorneys' fees and costs, the District Court awarded $26,166.18 for attorneys' fees and costs. IDT argues that the attorneys' fees and costs must be limited by Federal Rule of Civil Procedure Rule 68(d) because of its Offer of Judgment. 1228 argues no error in that the Agreement authorized attorneys' fees and expenses and because the damages judgment exceeded IDT's Offer of Judgment. If a defendant makes an offer of judgment and the judgment that the plaintiff obtains is less "favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. Pro. 68(d). Presently, since this Court is reversing the District Court's $131,619.00 damages judgment and reducing the same to $18,000, IDT's August 13, 2018 $20,000.00 Offer of Judgment exceeds the judgment. Therefore, Rule 68(d) must now be applied to the issues of IDT's costs. The District Court did not consider Rule 68 and we will remand for such consideration and determination of attorneys' fees and costs.

11

## V. CONCLUSION

Therefore, we will reverse the District Court's Judgment and Order in favor of 1228. We will award damages in favor of 1228 in the amount of $18,000.00. We will remand the issue of attorneys' fees and costs to the District Court for determination pursuant to Rule 68 and consistent with this Opinion.